## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YANIRA ACOSTA CRUZ
c/o 519 H Street NW
Washington, DC 20001

MANUEL PEREZ SANCHEZ
c/o 519 H Street NW
Washington, DC 20001

ELFIDIO ZEPEDA BERNAL
c/o 519 H Street NW
Washington, DC 20001

SEBASTIAN ARIAS CANALES
c/o 519 H Street NW
Washington, DC 20001

PEDRO HERNANDEZ REYES
c/o 519 H Street NW
Washington, DC 20001

    Plaintiffs,

v.

SMITH COMMONS DC, LLC
1926 Benning Road NE
Washington, DC 20002

JEROME BAILEY
7103 Pomander Lane
Chevy Chase, MD 20815

KAMAL CHANAKA
a/k/a KAMAL KURUPPU
6311 Landover Road, Apt. T3
Cheverly, MD 20785

BAILEY REAL ESTATE HOLDINGS, LLC
1926 Benning Road NE
Washington, DC 20002

    Defendants.

Case No. 16-cv-2540 (BAH)

**THIRD AMENDED COMPLAINT**

## SECOND AMENDED COMPLAINT[1]

### Introduction

1.      Defendants employed Plaintiffs at their restaurant, Smith Commons. Defendants engaged in a number of unlawful pay practices with respect to Plaintiffs.

2.      First: Defendants did not pay overtime. Second: at times, Defendants paid one of the Plaintiffs an hourly rate that was less than the District of Columbia's minimum wage. Third: Defendants engaged in a practice of time-shaving, whereby they did not pay Plaintiffs for all the hours they worked. And fourth: Defendants did not provide Plaintiffs with legally-mandated paid safe and sick leave.

3.      Plaintiffs bring this action to recover damages for: 1) Defendants' willful failure to pay overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; 2) Defendants' willful failure to pay minimum and overtime wages, in violation of the D.C. Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*; 3) Defendants' willful failure to pay regular wages, in violation of the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*; and 4) Defendants' failure to provide paid safe and sick leave, pursuant to the District of Columbia Accrued Safe and Sick Leave Act ("ASSLA"), D.C. Code § 32-531.01 *et seq.*

4.      After the Court denied Defendants' Motion to Dismiss on September 22, 2017, Defendants Jerome Bailey, Smith Commons DC, LLC, and Bailey Real Estate Holdings, LLC (collectively, "the Bailey Defendants") maliciously engaged in a fraudulent transfer with actual

---

[1] This amended complaint is filed "as a matter of course" pursuant to Fed. R. Civ. P. 15(a)(1)(B), as it is filed within 21 days of Defendants' answer to the prior complaint.

intent to hinder Plaintiffs' ability to collect on any future judgment in this matter. Accordingly, Plaintiffs also bring a claim for fraudulent conveyance pursuant to D.C. Code § 28-3101 *et seq.*

### Jurisdiction and Venue

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b), because one of the Defendants resides in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### Parties

7.      Plaintiff Yanira Acosta Cruz is an adult resident of the District of Columbia.

8.      Plaintiff Manuel Perez Sanchez is an adult resident of Maryland.

9.      Plaintiff Elfidio Zepeda Bernal is an adult resident of the District of Columbia.

10.      Plaintiff Sebastian Arias Canales is an adult resident of Maryland.

11.      Plaintiff Pedro Hernandez Reyes is an adult resident of the District of Columbia.

12.      Defendant Smith Commons DC, LLC is a District of Columbia corporate entity. Smith Commons DC, LLC does business as Smith Commons, a restaurant located at 1245 H Street NE, Washington, DC 20002. Smith Commons DC, LLC's resident agent for service of process is Jerome Bailey, 1926 Benning Road NE, Washington, DC 20002.

13.      Defendant Jerome Bailey is an adult resident of Maryland. He resides at 7103 Pomander Lane, Chevy Chase, MD 20815. He is the sole owner and the CEO of Defendant Smith Commons DC, LLC and Defendant Bailey Real Estate Holdings, LLC. Defendant Bailey holds and exercises authority over the operations of Smith Commons DC, LLC — including its pay practices.

14.     Defendant Kamal Chanaka is an adult resident of Maryland. He resides at 6311 Landover

Road, Apt. T3, Cheverly, MD 20785. He is the executive chef at Smith Commons. Defendant

Kamal Chanaka holds and exercises authority over the operations of Smith Commons DC, LLC

— including its pay practices.

15.     Defendant Bailey Real Estate Holdings, LLC is a District of Columbia corporate entity.

Bailey Real Estate Holdings, LLC's resident agent for service of process is Jerome Bailey, 1926

Benning Road NE, Washington, DC 20002.

### Factual Allegations Specific to Plaintiff Acosta Cruz

16.     Plaintiff Acosta Cruz worked at Smith Commons from approximately March 1, 2014

through approximately September 23, 2016.

17.     Plaintiff Acosta Cruz worked as a kitchen hand.

18.     Plaintiff Acosta Cruz's job duties primarily consisted of cutting vegetables, preparing

salads, and cleaning her work station.

19.     Plaintiff Acosta Cruz typically and customarily worked more than 40 hours per

workweek.

20.     Plaintiff Acosta Cruz worked a total of approximately 430.23 overtime hours for

Defendants.

21.     Plaintiff Acosta Cruz was never paid overtime wages when she worked more than 40

hours in a workweek.

22.     Plaintiff Acosta Cruz was paid her regular hourly rate across all of her hours worked,

including when she worked more than 40 hours in a workweek.

23.     Plaintiff Acosta Cruz was paid the following hourly rates:

| Approximate Dates | Hourly Rate |
|---|---|
| Mar. 1, 2014 - Jun. 24, 2016 | $11.00 |
| Jun. 25, 2016 - Sept. 23, 2016 | $11.50 |

24.     In addition to not receiving overtime wages, Plaintiff Acosta Cruz was also not paid for some of the time that she worked.

25.     Prior to April 2, 2016, Defendants engaged in a practice of rounding down the hours that they paid Plaintiff Acosta Cruz.

26.     Prior to April 2, 2016, Plaintiff Acosta Cruz was only paid for the whole hours worked in a given workweek. On a weekly basis, Plaintiff Acosta Cruz's hours were rounded down to the nearest whole hour below the actual time worked.

27.     For example, if Plaintiff Acosta Cruz worked 45 hours and 54 minutes in a workweek, she was only paid for 45 hours.

28.     For the pay period starting on April 2, 2016, Defendants started to pay Plaintiff Acosta Cruz for all of the hours and minutes that she worked.

29.     Plaintiff Acosta Cruz was paid nothing for approximately 79.5 hours.

30.     At all relevant times, Plaintiff Acosta Cruz was paid biweekly.

31.     At all relevant times, Plaintiff Acosta Cruz was paid by check.

32.     At all relevant times, Plaintiff Acosta Cruz clocked in and out with a punch clock that measured how many hours and minutes she worked.

33.     Defendant Bailey has admitted in an email that Plaintiff Acosta Cruz is owed $2,131.63 in unpaid overtime wages.

34.     However, Defendants owe Plaintiff Acosta Cruz approximately $3,242.59 in unpaid regular and overtime wages.

35.     Moreover, Defendants never provided Plaintiff Acosta Cruz with paid safe and sick leave as required by the ASSLA.

36.     Defendants should have provided Plaintiff Acosta Cruz with 5.00 days of paid leave in 2015 and 4.33 days of paid leave in 2016.

37.     Plaintiff Acosta Cruz lost wages in 2015 and 2016 because either she or her child were sick.

38.     For Defendants' failure to provide paid leave, Defendants owe Plaintiff Acosta Cruz approximately $838.63 in lost wages and compensatory damages — as well as "additional damages" described below.

### Factual Allegations Specific to Plaintiff Perez Sanchez

39.     Plaintiff Perez Sanchez worked at Smith Commons from approximately August 23, 2014 through approximately June 26, 2015, from approximately September 5, 2015 through approximately November 13, 2015, and from approximately March 5, 2016 through approximately August 19, 2016.

40.     Plaintiff Perez Sanchez worked as a kitchen hand.

41.     Plaintiff Perez Sanchez's job duties primarily consisted of cutting vegetables and meats, cooking entrees, and cleaning his work station.

42.     Plaintiff Perez Sanchez typically and customarily worked more than 40 hours per workweek.

43.     Plaintiff Perez Sanchez worked a total of approximately 175.75 overtime hours for Defendants.

44.     Plaintiff Perez Sanchez was never paid overtime wages when he worked more than 40 hours in a workweek.

45.     Plaintiff Perez Sanchez was paid his regular hourly rate across all of her hours worked, including when she worked more than 40 hours in a workweek.

46.     Plaintiff Perez Sanchez was typically paid the following hourly rates:

6

| Approximate Dates | Hourly Rate |
|---|---|
| Aug. 23, 2014 - Jun. 26, 2015 | $12.00 |
| *Leave of Absence* | |
| Sept. 5, 2015 - Nov. 13, 2015 | $12.00 |
| *Leave of Absence* | |
| Mar. 5, 2016 - Aug. 19, 2016 | $13.00 |

47.    During one pay period, Defendants paid Plaintiff Perez Sanchez at two different hourly rates. For each hourly rate, Plaintiff Perez Sanchez received a different paycheck. The pay period is as follows:

| Pay Period Start | Pay Period End | Hours Paid (1st Check) | Hourly Rate (1st Check) | Hours Paid (2nd Check) | Hourly Rate (2nd Check) |
|---|---|---|---|---|---|
| Jun. 11, 2016 | Jun. 24, 2016 | 85.98 | $13.00 | 90.00 | $13.50 |

48.    In addition to not receiving overtime wages, Plaintiff Perez Sanchez was also not paid for some of the time that he worked.

49.    Prior to April 2, 2016, Defendants engaged in a practice of rounding down the hours that they paid Plaintiff Perez Sanchez.

50.    Prior to April 2, 2016, Plaintiff Perez Sanchez was only paid for the whole hours worked in a given workweek. On a weekly basis, Plaintiff Perez Sanchez's hours were rounded down to the nearest whole hour below the actual time worked.

51.    For example, if Plaintiff Perez Sanchez worked 45 hours and 54 minutes in a workweek, he was only paid for 45 hours.

52.    For the pay period starting on April 2, 2016, Defendants started to pay Plaintiff Perez Sanchez for all of the hours and minutes that he worked.

53.    Plaintiff Perez Sanchez was paid nothing for approximately 43.50 hours.

54.    At all relevant times, Plaintiff Perez Sanchez was paid biweekly.

55.    At all relevant times, Plaintiff Perez Sanchez was paid by check.

56.     At all relevant times, Plaintiff Perez Sanchez clocked in and out with a punch clock that measured how many hours and minutes he worked.

57.     Defendant Bailey has admitted in an email that Perez Sanchez is owed $1,024.74 in unpaid overtime wages.

58.     However, Defendants owe Plaintiff Perez Sanchez approximately $2,133.99 in unpaid regular and overtime wages.

59.     Moreover, Defendants never provided Plaintiff Perez Sanchez with paid safe and sick leave as required by the ASSLA.

60.     Defendants should have provided Plaintiff Perez Sanchez with 3.27 days of paid leave in 2015 and 2.91 days of paid leave in 2016.

61.     Plaintiff Perez Sanchez lost wages in 2015 and 2016 because he was sick.

62.     For Defendants' failure to provide paid leave, Defendants owe Plaintiff Perez Sanchez approximately $616.67 in lost wages and compensatory damages — as well as "additional damages" described below.

**Factual Allegations Specific to Plaintiff Zepeda Bernal**

63.     Plaintiff Zepeda Bernal worked at Smith Commons from approximately April 5, 2014 through approximately September 19, 2016.

64.     Plaintiff Zepeda Bernal worked as a kitchen hand.

65.     Plaintiff Zepeda Bernal 's job duties primarily consisted of cutting vegetables and meats, cooking hamburgers, and cleaning his work station.

66.     Plaintiff Zepeda Bernal typically and customarily worked more than 40 hours per workweek.

67.     Plaintiff Zepeda Bernal worked a total of approximately 813.36 overtime hours for Defendants.

68.     Plaintiff Zepeda Bernal was never paid overtime wages when he worked more than 40 hours in a workweek.

69.     Plaintiff Zepeda Bernal was paid his regular hourly rate across all of her hours worked, including when she worked more than 40 hours in a workweek.

70.     Plaintiff Zepeda Bernal was typically paid the following hourly rates:

| Approximate Dates | Hourly Rate |
|---|---|
| Apr. 5, 2014 - Jun. 12, 2015 | $9.00 |
| Jun. 13, 2015 - Apr. 1, 2016 | $9.50 |
| Apr. 2, 2016 - Apr. 15, 2016 | $10.50 |
| Apr. 16, 2016 - Jun. 10, 2016 | $11.00 |
| Jun. 11, 2016 - Sept. 16, 2016 | $12.50 |

71.     During five pay periods, Defendants paid Plaintiff Zepeda Bernal at two different hourly rates. For each hourly rate, Plaintiff Zepeda Bernal received a different paycheck. The pay periods are as follows:

| Pay Period Start | Pay Period End | Hours Paid (1st Check) | Hourly Rate (1st Check) | Hours Paid (2nd Check) | Hourly Rate (2nd Check) |
|---|---|---|---|---|---|
| Feb. 20, 2016 | Mar. 04, 2016 | 90.00 | $9.50 | 8.00 | $11.00 |
| Mar. 5, 2016 | Mar. 18, 2016 | 95.00 | $9.50 | 23.00 | $11.00 |
| Mar. 19, 2016 | Apr. 1, 2016 | 69.00 | $9.50 | 36.00 | $11.00 |
| Apr. 2, 2016 | Apr. 15, 2016 | 65.76 | $10.50 | 35.43 | $11.00 |
| Jun. 11, 2016 | Jun. 24, 2016 | 95.32 | $11.00 | 90.00 | $12.50 |

72.     Plaintiff Zepeda Bernal did not always earn the District of Columbia's minimum wage.

73.     From July 1, 2014 through May 29, 2015, Plaintiff Zepeda Bernal was paid $9.00 per hour — less than the then-current District of Columbia then minimum wage of $9.50 per hour.

74.     From July 1, 2015 through April 1, 2016, Plaintiff Zepeda Bernal earned $9.50 per hour — less than the then-current District of Columbia minimum wage of $10.50 per hour.

75.     In addition to not receiving minimum and overtime wages, Plaintiff Zepeda Bernal was also not paid for some of the time that he worked.

76.     Prior to April 2, 2016, Defendants engaged in a practice of rounding down the hours that they paid Plaintiff Zepeda Bernal.

77.     Prior to April 2, 2016, Plaintiff Zepeda Bernal was only paid for the whole hours worked in a given workweek. On a weekly basis, Plaintiff Zepeda Bernal's hours were rounded down to the nearest whole hour below the actual time worked.

78.     For example, if Plaintiff Zepeda Bernal worked 45 hours and 54 minutes in a workweek, he was only paid for 45 hours.

79.     For the pay period starting on April 2, 2016, Defendants started to pay Plaintiff Zepeda Bernal for all of the hours and minutes that he worked.

80.     In the three years preceding the filing of the relevant complaint in this matter, Plaintiff Zepeda Bernal was paid nothing for approximately 78 hours.

81.     At all relevant times, Plaintiff Zepeda Bernal was paid biweekly.

82.     At all relevant times, Plaintiff Zepeda Bernal was paid by check.

83.     At all relevant times, Plaintiff Zepeda Bernal clocked in and out with a punch clock that measured how many hours and minutes he worked.

84.     Defendant Bailey has admitted in an email that Plaintiff Zepeda Bernal is owed $6,049.39 in unpaid minimum and overtime wages.

85.     However, in the three years preceding the filing of the relevant complaint in this matter, Defendants owe Plaintiff Zepeda Bernal approximately $7,862.77 in unpaid regular, minimum and overtime wages.

86.     Moreover, Defendants never provided Plaintiff Zepeda Bernal with paid safe and sick leave as required by the ASSLA.

87.     Defendants should have provided Plaintiff Zepeda Bernal with 5.00 days of paid leave in 2015 and 5.00 days of paid leave in 2016.

88.     Plaintiff Zepeda Bernal lost wages in 2015 and 2016 because he was sick.

89.     For Defendants' failure to provide paid leave, Defendants owe Plaintiff Zepeda Bernal

approximately $920.00 in lost wages and compensatory damages — as well as "additional

damages" described below.

**Factual Allegations Specific to Plaintiff Arias Canales**

90.     In the three years preceding the filing of the relevant complaint in this matter, Plaintiff

Arias Canales worked at Smith Commons from December 20, 2013 through approximately

September 30, 2016.

91.     Plaintiff Arias Canales worked as a kitchen hand.

92.     Plaintiff Arias Canales' job duties primarily consisted of cooking entrees and cleaning his

work station.

93.     Plaintiff Arias Canales typically and customarily worked more than 40 hours per

workweek.

94.     In the three years preceding this complaint, Plaintiff Arias Canales worked a total of

approximately 433.82 overtime hours for Defendants.

95.     Plaintiff Arias Canales was never paid overtime wages when he worked more than 40

hours in a workweek.

96.     Plaintiff Arias Canales was paid his regular hourly rate across all of his hours worked,

including when he worked more than 40 hours in a workweek.

97.     Plaintiff Arias Canales was paid the following hourly rates:

| Approximate Dates | Hourly Rate |
|---|---|
| Dec. 14, 2013 - Apr. 18, 2014 | $12.50 |
| Apr. 19, 2014 - Sept. 30, 2016 | $13.00 |

98.     In addition to not receiving overtime wages, Plaintiff Arias Canales was not paid for

some of the time that he worked.

99.     Prior to April 2, 2016, Defendants engaged in a practice of rounding down the hours that they paid Plaintiff Arias Canales.

100.    Prior to April 2, 2016, Plaintiff Arias Canales was only paid for the whole hours worked in a given workweek. On a weekly basis, Plaintiff Arias Canales' hours were rounded down to the nearest whole hour below the actual time worked.

101.    For example, if Plaintiff Arias Canales worked 45 hours and 54 minutes in a workweek, he was only paid for 45 hours.

102.    For the pay period starting on April 2, 2016, Defendants started to pay Plaintiff Arias Canales for all of the hours and minutes that he worked.

103.    In the three years preceding the filing of the relevant complaint in this matter, Plaintiff Arias Canales was paid nothing for approximately 90 hours.

104.    At all relevant times, Plaintiff Arias Canales was paid biweekly.

105.    At all relevant times, Plaintiff Arias Canales was paid by check.

106.    At all relevant times, Plaintiff Arias Canales clocked in and out with a punch clock that measured how many hours and minutes he worked.

107.    Defendant Bailey has admitted in an email that Plaintiff Arias Canales is owed $2,419.04 in unpaid overtime wages.

108.    However, for the three years preceding the filing of the relevant complaint in this matter, Defendants owe Plaintiff Arias Canales approximately $4,012.91 in unpaid regular and overtime wages.

109.    Moreover, Defendants never provided Plaintiff Arias Canales with paid safe and sick leave as required by the ASSLA.

110.    Defendants should have provided Plaintiff Arias Canales with 5.00 days of paid leave in 2015 and 3.27 days of paid leave in 2016.

111.    Plaintiff Arias Canales lost wages in 2015 and 2016 because he was sick.

112.    For Defendants' failure to provide paid leave, Defendants owe Plaintiff Arias Canales

approximately $893.16 in lost wages and compensatory damages — as well as "additional

damages" described below.

### Factual Allegations Specific to Plaintiff Hernandez Reyes

113.    In the three years preceding the filing of the relevant complaint in this matter, Plaintiff

Hernandez Reyes worked at Smith Commons from December 30, 2013 through approximately

June 1, 2013, and from approximately December 31, 2014 through approximately November 14,

2016.

114.    Plaintiff Hernandez Reyes' job duties primarily consisted of cooking entrees and cleaning

his work station.

115.    Plaintiff Hernandez Reyes typically and customarily worked more than 40 hours per

workweek for Defendants.

116.    In the three years preceding the filing of the relevant complaint in this matter, Plaintiff

Hernandez Reyes worked a total of approximately 1,200 overtime hours for Defendants.

117.    Plaintiff Hernandez Reyes was never paid overtime wages when he worked more than 40

hours in a workweek.

118.    Plaintiff Hernandez Reyes was paid his regular hourly rate across all of his hours worked,

including when he worked more than 40 hours in a workweek.

119.    For example, as shown by the paystub below, from May 30 – June 12, 2015, Defendants

paid Plaintiff Hernandez *$15.00 for each of the 151 hours* that Plaintiff Hernandez worked.

| | | | | | |
|---|---|---|---|---|---|
| FOLD AND REMOVE | | | | FOLD AND REMOVE | ⬆ |

| PERSONAL AND CHECK INFORMATION | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| Pedro Hernandez | | Regular | 151.00 | 15.0000 | 2265.00 | 700.00 | 9996.00 |
| 601 Park Rd NW Apt 107 | | EARNINGS | 151.00 | | 2265.00 | 700.00 | 9996.00 |
| Washington, DC  20010 | WITHHOLDINGS | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| Soc Sec #: xxx-xx-xxxx    Employee ID: 59 | | Social Security | | | 140.43 | | 619.75 |
| Home Department: 7 Cook | | Medicare | | | 32.84 | | 144.94 |
| | | Fed Income Tax   M 1 | | | 231.58 | | 720.78 |
| Pay Period:  05/30/15 to 06/12/15 | | DC Income Tax    J 1 | | | 130.69 | | 514.08 |
| Check Date:  06/19/15    Check #: 99657 | | | | | | | |
| NET PAY ALLOCATIONS | | TOTAL | | | 535.54 | | 1999.55 |
| DESCRIPTION       THIS PERIOD ($)      YTD ($) | | | | | | | |
| Check Amount         1729.46      7996.45 | | | | | | | |
| NET PAY               1729.46      7996.45 | | | | | | | |

120.    At all relevant times, Plaintiff Hernandez Reyes was paid $15.00 per hour.

121.    In addition to not receiving overtime wages, Plaintiff Hernandez Reyes was also not paid for some of the time that he worked.

122.    Prior to April 2, 2016, Defendants engaged in a practice of rounding down the hours that they paid Plaintiff Hernandez Reyes.

123.    Prior to April 2, 2016, Plaintiff Hernandez Reyes was only paid for the whole hours worked in a given workweek. On a weekly basis, Plaintiff Hernandez Reyes' hours were rounded down to the nearest whole hour below the actual time worked.

124.    For example, if Plaintiff Hernandez Reyes worked 45 hours and 54 minutes in a workweek, he was only paid for 45 hours.

125.    For the pay period starting on April 2, 2016, Defendants started to pay Plaintiff Hernandez Reyes for all of the hours and minutes that he worked.

126.    In the three years preceding the filing of the relevant complaint in this matter, Plaintiff Hernandez Reyes was paid nothing for approximately 96 hours.

127.    At all relevant times, Plaintiff Hernandez Reyes was paid biweekly.

128.    At all relevant times, Plaintiff Hernandez Reyes was paid by check.

129.    At all relevant times, Plaintiff Hernandez Reyes clocked in and out with a punch clock that measured how many hours and minutes he worked.

130.    For the three years preceding the filing of the relevant complaint in this matter, Defendants owe Plaintiff Hernandez Reyes approximately $11,160.00 in unpaid regular and overtime wages.

131.    Moreover, Defendants never provided Plaintiff Hernandez Reyes with paid safe and sick leave as required by the ASSLA.

132.    Defendants should have provided Plaintiff Hernandez Reyes with 5.00 days of paid leave in 2015 and 5.00 days of paid leave in 2016.

133.    Plaintiff Hernandez Reyes lost wages in 2015 and 2016 because he was sick.

134.    For Defendants' failure to provide paid leave, Defendants owe Plaintiff Hernandez Reyes approximately $1,200.00 in lost wages and compensatory damages — as well as "additional damages" described below.

### Factual Allegations Common to All Plaintiffs

135.    At all relevant times, Defendants had the power to hire and fire Plaintiffs.

136.    At all relevant times, Defendants had the power to control Plaintiffs' work schedule.

137.    At all relevant times, Defendants had the power to supervise and control Plaintiffs' work.

138.    At all relevant times, Defendants had the power to set Plaintiffs' rate and manner of pay.

139.    At all relevant times, Defendants were aware that they were legally required to pay Plaintiffs one and one-half times Plaintiffs' regular hourly rate for all hours worked in excess of 40 hours in any one workweek.

140.    At all relevant times, Defendants were aware that they were legally required to pay Plaintiffs the applicable minimum wage.

141.    At all relevant times, Defendants were aware that they were required to provide paid safe and sick leave pursuant to the ASSLA.

142.    The District of Columbia minimum wage was $8.25 per hour prior to July 1, 2014, $9.50 per hour from July 1, 2014 through June 30, 2016, $10.50 per hour from July 1, 2015 through June 30, 2016, $11.50 per hour from July 1, 2016 through June 30, 2017, and $12.50 per hour from July 1, 2017 through the present. D.C. Code § 32-1003(a).

143.    At all relevant times, Defendants did not provide Plaintiffs with paid leave pursuant to the ASSLA. Plaintiffs were required to work for Defendants, irrespective of whether or not Plaintiffs were sick. If Plaintiffs took time off because of illness or the illness of a family member, they were not paid for that time.

144.    At all relevant times, Defendant Chanaka directly supervised Plaintiffs at work.

145.    At all relevant times, Defendant Chanaka personally set and controlled Plaintiffs' work schedules.

146.    At all relevant times, Defendant Chanaka personally hired and fired employees at Smith Commons.

147.    At all relevant times, Defendant Bailey had access to Plaintiffs' payroll and time records.

148.    At all relevant times, Defendant Bailey had oversight over and authority to control Smith Commons' pay practices.

149.    At all relevant times, Defendant Bailey held regular monthly meetings with Smith Commons' management to review its business operations.

150.    At all relevant times, Defendant Bailey regularly reviewed Smith Commons' finances, including its payroll records.

151.    At all relevant times, Defendant Bailey exercised the ability to control Plaintiffs' pay.

152.    For example, when Plaintiff Perez Sanchez asked his supervisor for a raise in his hourly

rate, the supervisor subsequently told him that Defendant Bailey had denied his request.

153.    At all relevant times, Defendant Bailey represented Smith Commons' in matters

involving the Alcoholic Beverage Control Board and the local Advisory Neighborhood

Commission.

154.    For example, in negotiations with the local Advisory Neighborhood Commission,

Defendant Bailey personally negotiated a settlement which included terms regarding Smith

Commons' hours of outdoor operations, its hours of live entertainment, and its hours for alcohol

sales.

155.    At all relevant times, Defendant Bailey made decisions concerning Smith Commons'

operations, on matters ranging from the restaurant's hours of operation, to how employee's hours

were tracked, to having no more than twelve beer taps at the bar.

156.    Defendant Bailey negotiated the lease terms between Smith Commons and its landlord,

1926 Benning Road NE, LLC.

157.    Upon information and belief, Defendant Bailey is the sole owner and officer of 1926

Benning Road NE, LLC.

158.    Upon information and belief, Defendant Bailey is not only is the managing partner of

Smith Commons, but also effectively its landlord.

159.    At all relevant times, Defendant Bailey frequently held personal parties at Smith

Commons. During such events, Defendant Bailey critiqued the quality of the restaurant's service

and operations.

160.    Pursuant to a February 8, 2017 affidavit submitted to this Court, Defendant Bailey has, in

his personal capacity, knowledge and recollection of Plaintiffs' work at Smith Commons,

including their dates of employment, their job titles, their work duties, how Plaintiffs' hours were tracked, and how Plaintiffs were paid.

161.    In 2014, Defendant Bailey hired new kitchen management at Smith Commons. At that time, Defendant Bailey personally spoke to the staff, including the Plaintiffs. He said everyone could decide to either stay or leave, but that their pay could not be raised. He said the restaurant was unprofitable and, therefore, each employee should be grateful for his or her employment.

162.    On April 12, 2016, Defendant Smith Commons DC, LLC was sued by a former employee, David Romero, for unpaid wages.

163.    On approximately April 17, 2016, Defendant Bailey personally reviewed Smith Commons' time and payroll records, records which on their face undeniably showed that Smith Commons' staff were not paid minimum and overtime wages.

164.    On approximately April 17, 2016, Defendant Bailey personally created payroll calculations for the purpose of determining the amount of unpaid minimum and overtime wages owed to David Romero.

165.    Defendant Bailey had personal knowledge that Smith Commons' staff were not paid minimum and overtime wages.

166.    Within days of reviewing David Romero's lawsuit, Defendant Bailey ordered that Smith Commons' staff be paid for every hour and minute worked. Hence, on April 22, 2016, Smith Commons' paid Plaintiffs for every hour and minute worked between the pay period of April 2, 2016 – April 15, 2016 (instead of rounding down their hours).

167.    However, though Defendant Bailey ordered the payment of every hour and minute worked, Defendant Bailey intentionally ignored the ongoing denial of overtime wages to most of his staff.

168. For example, Plaintiff Zepeda Bernal worked 101.50 hours during the two weeks from August 6, 2016 through August 19, 2016. However, Defendants paid him his regular hourly rate of $12.50 across all hours worked, as illustrated by the following paystub:

| PERSONAL AND CHECK INFORMATION | | | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|---|---|
| Elfidio Zepeda Bernal | | | | | | | | | |
| 712 Quincy St NW Apt B | | | | Regular | 101.50 | 12.5000 | 1268.75 | 1735.48 | 18874.26 |
| Washington, DC 20011 | | | | Total Hours | 101.50 | | | 1735.48 | |
| | | | | Gross Earnings | | | 1268.75 | | 18874.26 |
| Soc Sec #: xxx-xx-xxxx   Employee ID: 229 | | | | Total Hrs Worked | 101.50 | | | | |
| Home Department: 10 Dish | | | WITHHOLDINGS | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| | | | | Social Security | | | 78.66 | | 1170.20 |
| Pay Period: 08/06/16 to 08/19/16 | | | | Medicare | | | 18.40 | | 273.68 |
| Check Date: 08/26/16   Check #: 100915 | | | | Fed Income Tax | M 2 | | 62.84 | | 624.35 |
| NET PAY ALLOCATIONS | | | | DC Income Tax | J 2 | | 60.24 | | 804.14 |
| DESCRIPTION | THIS PERIOD ($) | YTD ($) | | | | | | | |
| Check Amount | 1048.61 | 16001.89 | | TOTAL | | | 220.14 | | 2872.37 |
| NET PAY | 1048.61 | 16001.89 | | | | | | | |

169. In other words, *Defendant Bailey did not merely have authority to control Smith Commons' pay practices — he personally controlled them.*

170. *Moreover, Defendant Bailey personally approved and signed almost every check issued by Smith Commons — paychecks, checks to vendors, and checks to contractors.*

171. At all relevant times, Defendants employed between 25 and 99 employees.

172. At all relevant times, the annual gross volume of Defendants' business exceeded $500,000.00.

173. At all relevant times, Defendants had two or more employees who handled goods and/or materials that had travelled in or been produced for interstate commerce.

**Factual Allegations Regarding Fraudulent Conveyance**

174. Defendants' filed a Motion to Dismiss in this matter on February 9, 2017. This motion was denied on September 22, 2017.

175.    Later that same day — September 22, 2017 — Defendant Jerome Bailey personally

transferred $967,572.15 from the bank account of Defendant Smith Commons DC, LLC to the

bank account of Defendant Bailey Real Estate Holdings, LLC (Bailey Real Estate Holdings,

LLC was not yet a party to this matter).

176.    Defendant Smith Commons received absolutely no consideration for its transfer of

$967,572.15 to Defendant Bailey Real Estate Holdings.

177.    The Bailey Defendants engaged in this transaction with actual intent to hinder, delay, or

defraud Plaintiffs as potential furutre creditors.

178.     Moreover, the Bailey Defendants knew that this transaction would leave Smith

Commons insolvent — and with insufficient funds to satisfy Plaintiffs' and other creditors

claims.

179.    This transaction was outrageous, grossly fraudulent, and in willful disregard of Plaintiffs'

rights as employees and future creditors. It is particularly outrageous given that Defendant Bailey

is an extremely wealthy man, and Plaintiffs are workers who were denied minimum and

overtime wages.

180.    On information and belief, Defendant Jerome Bailey has a net worth of between five and

ten million dollars.

181.    Moreover, on information and belief, the transaction described above is not the only time

that, during the pendency of this lawsuit, the Bailey Defendants have engaged in fraudulent

transfers with the intent to hinder Plaintiff's ability to collect on any future judgment in this

matter.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

182.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

183.     Each defendant (with the exception of Bailey Real Estate Holdings, LLC) was an "employer" of Plaintiffs within the meaning of the FLSA. 29 U.S.C. § 203(d).

184.     The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. 29 U.S.C. § 207(a)(1).

185.     Defendants (with the exception of Bailey Real Estate Holdings, LLC) violated the FLSA by knowingly failing to pay Plaintiffs at least one and one-half times Plaintiffs' regular hourly rates for hours worked in excess of 40 hours in any one workweek.

186.     Defendants' (with the exception of Bailey Real Estate Holdings, LLC) violations of the FLSA were willful.

187.     For Defendants' violations of the FLSA, Defendants (with the exception of Bailey Real Estate Holdings, LLC) are liable to Plaintiffs for unpaid overtime wages, an equal amount as liquidated damages, court costs, reasonable attorney's fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT II
### FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE DCMWA

188.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

189.     Each defendant (with the exception of Bailey Real Estate Holdings, LLC) was an "employer" of Plaintiffs within the meaning of the DCMWA. D.C. Code § 32-1002(3).

190.     The DCMWA required that employers pay non-exempt employees at least $8.25 per hour prior to July 1, 2014, $9.50 per hour from July 1, 2014 through June 30, 2016, $10.50 per hour from July 1, 2015 through June 30, 2016, $11.50 per hour from July 1, 2016 through June 30, 2017, and $12.50 per hour from July 1, 2017 through the present. D.C. Code § 32-1003(a).

191.    The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. D.C. Code § 32-1003(c).

192.    Defendants (with the exception of Bailey Real Estate Holdings, LLC) violated the DCMWA by knowingly failing to pay the required minimum wage to one Plaintiff.

193.    Defendants (with the exception of Bailey Real Estate Holdings, LLC) violated the DCMWA by knowingly failing to pay all Plaintiffs at least one and one-half times her regular hourly rates for hours worked in excess of 40 hours in any one workweek.

194.    Defendants' violations of the DCMWA were willful.

195.    For Defendants' violations of the DCMWA, Defendants (with the exception of Bailey Real Estate Holdings, LLC) are liable to Plaintiffs for unpaid minimum and overtime wages, an amount equal to three times the unpaid minimum and overtime wages as liquidated damages, court costs, reasonable attorney's fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT III
### FAILURE TO PAY WAGES UNDER THE DCWPCL

196.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

197.    Each defendant (with the exception of Bailey Real Estate Holdings, LLC) was an "employer" of Plaintiffs within the meaning of the DCWPCL. D.C. Code § 32-1301(1).

198.    The DCWPCL requires employers to pay an employee who is discharged no later than the working day following the discharge. D.C. Code § 32-1303(1).

199.    The DCWPCL requires employers to pay an employee who quits or resigns all wages due upon the next regular payday, or within 7 days from the date of quitting or resigning, whichever is earlier. D.C. Code § 32-1303(2).

200.    Through their practice of time shaving, Defendants violated the DCWPCL by knowingly

failing to timely pay Plaintiffs all wages earned.

201.    Defendants' violations of the DCWPCL were willful.

202.    For Defendants' violations of the DCWPCL, Defendants (with the exception of Bailey

Real Estate Holdings, LLC) are liable to Plaintiffs for unpaid wages, an amount equal to three

times the amount of unpaid wages as liquidated damages, court costs, reasonable attorney's fees

and expenses, interest, and any other relief deemed appropriate by the Court.

<u>COUNT IV</u>

**FAILURE TO PROVIDE SICK LEAVE UNDER THE ASSLA**

203.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

204.    Each defendant (with the exception of Bailey Real Estate Holdings, LLC) was an

"employer" of Plaintiffs within the meaning of the ASSLA. D.C. Code § 32-531.01.

205.    The ASSLA requires the following amounts of paid leave:

| Size of Employer | Provision of Paid Leave | Maximum Provision Per Calendar Year |
|---|---|---|
| 100 or more employees | 1 hour for every 37 hours worked | 7 days |
| 25 to 99 employees | 1 hour for every 43 hours worked | 5 days |
| 24 or fewer employees | 1 hour for every 87 hours worked | 3 days |

D.C. Code § 32-531.02(a).

206.    Defendants (with the exception of Bailey Real Estate Holdings, LLC) violated the

ASSLA by not providing Plaintiffs with the required paid leave.

207.    Defendants (with the exception of Bailey Real Estate Holdings, LLC) willfully violated

the ASSLA — and showed a wanton disregard for both the ASSLA and its public policy

justifications. When a restaurant requires workers who handle food to be present when they are

sick, it endangers the public.

208.     For Defendants' violations of the ASSLA, Defendants (with the exception of Bailey Real

Estate Holdings, LLC) are liable to Plaintiffs for $500.00 in additional damages for each accrued

day of leave denied, regardless of whether Plaintiffs took unpaid leave or reported to work on

that day. D.C. Code § 32-531.12(b).

209.     For Defendants' violations of the ASSLA, Defendants (with the exception of Bailey Real

Estate Holdings, LLC) are liable for back pay for lost wages, additional damages, court costs,

reasonable attorney's fees and expenses, and any other relief deemed appropriate by the Court.

D.C. Code § 32-531.12(e).

## COUNT V
## FRAUDULENT CONVEYANCE

210.     Plaintiffs are "creditors" of the Bailey Defendants

211.     In violation of D.C. Code § 28-3104(a)(1), the Bailey Defendants engaged in transfers of

significant sums of money with actual intet to hinder delay, or defraud the Plaintiffs.

212.     In violation of D.C. Code § 28-3104(a)(2), the Bailey Defendants engaged in transfers of

significant sums of money from Defendant Smith Commons DC, LLC to Defendant Bailey Real

Estate Holdings, LLC which the Bailey Defendants knew would leave Smith Commons DC,

LLC without the ability to pay future debts.

213.     The Bailey Defendants engaged in these transactions with malice. These transactions

were designed to protect a wealthy man's assets at the expense of the workers who he failed to

pay.

214.     For the Bailey Defendants' fraudulent conveyances, Plaintiffs seek avoidance of the

$967,572.15 transfer from Smith Commons DC, LLC to Bailey Real Estate Holdings, LLC.

Plaintiffs also seek $1,000,000.00 in punitive damages for the Bailey Defendats outrageous

attempt to thwart Plaintiffs' ability to collect on any future judgment and circumvent the powers

of this Court. *See, e.g., Chatman v. Lawlor,* **831 A.2d 395 (D.C. 2003)**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against

Defendants in the current total amount of **$1,214,508.01**, and grant the following relief.

I.      **As to Defendants Smith Commons DC, LLC, Jerome Bailey, and Kamal Chanaka,**

**enter a joint and several judgment of liability in the amount of $214,508.01**, and:

    a.      Award Plaintiffs $113,649.04, consisting of the following overlapping elements:

        i.      unpaid overtime wages, plus an equal amount as liquidated damages,

                pursuant to the FLSA, 29 U.S.C. § 216;

        ii.     unpaid minimum and overtime wages, plus three times the amount of

                unpaid wages as liquidated damages, pursuant to the DCMWA, D.C. Code

                § 32-1012;

        iii.    unpaid regular wages, plus three times the amount of unpaid wages as

                liquidated damages, pursuant to the, D.C. Code §§ 32-1303(4) and 32-

                1308;

    b.      Award Plaintiffs $26,358.47, consisting of the following:

        i.      $4,468.47 in lost wages and compensatory damages for

                denied paid leave, pursuant to the ASSLA, D.C. Code § 32-531.02(e);

        ii.     $21,890.00 in additional damages for each day of denied paid leave,

                pursuant to the ASSLA, D.C. Code § 32-531.12(b);

    c.      Award Plaintiffs pre-judgment and post-judgment interest as permitted by law;

    d.      Award Plaintiffs attorney's fees and expenses computed pursuant to the matrix

    approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and

updated to account for the current market hourly rates for attorney's services, pursuant to

D.C. Code § 32-1308(b)(1) (as of October 30, 2017, approximately $74,100.50);

 e.  Award Plaintiffs court costs (currently, $400.00); and

 f.  Award any additional relief the Court deems just.

II. **As to Defendants Smith Commons DC, LLC, Jerome Bailey, and Bailey Real Estate**

**Holdings, LLC, enter a joint and several judgment of liability in the amount of**

**$1,000,000.00**, and:

 a.  Award Plaintiffs $1,000,000.00 for Defendants' fraudulent conveyance;

 b.  Avoid the transfer of $967,572.15 from Smith Commons DC, LLC to Bailey Real

Estate Holdings, LLC; and

 c.  Grant such further equitable relief as the Court deems just.


Date: December 1, 2017     Respectfully submitted,

           /s/ Justin Zelikovitz, Esq.
           Justin Zelikovitz, #986001
           DCWageLaw
           519 H Street NW
           Washington, DC 20001
           Phone: (202) 803-6083
           Fax: (202) 683-6102
           justin@dcwagelaw.com

           *Counsel for Plaintiffs*